1

2

3

4                                UNITED STATES DISTRICT COURT

5                              NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA, FOR            Case No.  14-cv-02503-MEJ
     THE USE AND BENEFIT OF HCI
     SYSTEMS, INC.,
8                                             **ORDER RE: MOTION TO DISMISS**
                    Plaintiff,
9                                             Re: Dkt. Nos. 19, 21
            v.
10
     AGBAYANI CONSTRUCTION
11   CORPORATION, A CALIFORNIA
     CORPORATION, et al.,
12
                    Defendants.
13

14                                    **INTRODUCTION**

15          This is an interference with contractual relations and breach of contract case related to the

16   construction of a fire alarm system upgrade at the Ronald Dellums Federal Building in Oakland,

17   California.  Pending before the Court are Defendant Sabah International, Inc.'s Motion to Dismiss

18   (Dkt. No. 19, "Sabah Mot.") and Defendant Agbayani Construction Corporation's Motion to

19   Dismiss (Dkt. No. 21, "Agbayani Mot."), both seeking dismissal under Federal Rule of Civil

20   Procedure ("Rule") 12(b)(6).  The Court finds these motions suitable for disposition without oral

21   argument and VACATES the August 28, 2014 hearing.  Civ. L.R. 7-1(b).  Having considered the

22   parties' papers, relevant legal authority, and the record in this case, the Court **GRANTS** Sabah's

23   Motion **WITH LEAVE TO AMEND** and **DENIES** Agbayani's Motion for the reasons set forth

24   below.

25                                    **BACKGROUND**

26          Agbayani, as a general contractor, entered into a written contract with the General Services

27   Administration, under which Agbayani agreed to construct and complete a fire alarm system

28

*United States District Court*
*Northern District of California*

upgrade at the Ronald Dellums Federal Building in Oakland, California (the "Project").[1]  Compl. ¶ 7.  Agbayani executed a bond with Defendant First National Insurance Company of America, as surety, "for the benefit of all persons who should perform labor upon or furnish materials to be used on the Project," in accordance with the Miller Act, 40 U.S.C. § 3131-34.  *Id.* ¶ 21.

Agbayani subsequently entered into a written "time and material" subcontract with Plaintiff HCI Systems, Inc., in October 2012, under which HCI was to provide various materials, installation, programming, testing, inspections, and project management to complete the Project, in exchange for which Agbayani agreed to pay HCI up to $1,216,325.00.  *Id.* ¶¶ 8, 12.  Between October 2012 and September 2013, HCI completed its work under the Project and submitted invoices in the total amount of $436,243.24.  *Id.* ¶¶ 13, 23.  HCI alleges that it fully performed all of its obligations, but Agbayani has paid HCI only $286,055.47, leaving a balance of $150,187.77 plus interest owed to HCI.  *Id.* ¶¶ 14, 16.

HCI alleges that Sabah knew of the subcontract between HCI and Agbayani.  *Id.* ¶ 30.  Sabah met with Agbayani and advised it that HCI's work was defective.  *Id.* Agbayani then contracted with Sabah for the work set forth in the subcontract between Agbayani and HCI.  *Id.* ¶ 31.  HCI alleges that Agbayani refuses to pay the balance due, and that Agbayani's refusal is the result of Sabah's wrongful conduct.  *Id.* ¶¶ 17, 31.

On November 16, 2012, HCI entered into a subcontract with Urban Services Group, Inc. ("USG") to perform testing, inspection and maintenance of the alarm system.  *Id.* ¶ 35.  Agbayani knew of this subcontract, but met with USG and made false representations regarding HCI and its work at the Project.  *Id.* ¶¶ 36-37.  Agbayani advised USG to terminate its subcontract with HCI.  *Id.* ¶ 37.  HCI alleges that Agbayani's acts were willful, oppressive, and fraudulent.  *Id.* ¶ 40.  On April 30, 2014, USG terminated its subcontract with HCI.  *Id.* ¶ 38.

On October 18, 2013, HCI entered into a subcontract with ECOM Electric ("ECOM") to install and program the alarm system and devices for the Project.  *Id.* ¶ 42.  Agbayani knew of this subcontract, but met with ECOM and made false representations regarding HCI and its work at the

---

[1] HCI does not allege the date this contract was executed.

United States District Court
Northern District of California

1   Project.  *Id.* ¶ 44.  Agbayani advised ECOM to terminate its subcontract with HCI.  *Id.*  HCI

2   alleges that Agbayani's acts were willful, oppressive, and fraudulent.  *Id.* ¶ 47.  On April 15, 2014,

3   ECOM terminated its subcontract with HCI.  *Id.* ¶ 45.

4        On May 30, 2014, HCI filed the present Complaint, alleging five causes of action: (1)

5   breach of contract against Agbayani; (2) money due on statutory labor and material bond under the

6   Miller Act against Agbayani and First National; (3) intentional interference with contractual

7   relations against Sabah; (4) intentional interference with contractual relations against Agbayani as

8   to the USG subcontract; and (5) intentional interference with contractual relations against

9   Agbayani as to the ECOM subcontract.  Because it alleges that the defendants' actions were

10  "willful, oppressive and fraudulent," HCI seeks punitive damages as part of its claims for

11  intentional interference with contractual relations.  *Id.* ¶¶ 33, 40, 47.

12       Sabah filed its Motion on July 21, 2014, seeking dismissal of the third cause of action for

13  HCI's failure to plead its allegations of intentional interference with contractual relations with

14  particularity as required under Rule 9.  Sabah Mot. at 1-2.  HCI filed its Opposition on August 4,

15  2014.  Dkt. No. 28 ("Sabah Opp'n").  Agbayani also filed its Motion on July 21, 2014, seeking

16  dismissal of the fourth and fifth causes of action for the same reason.  Agbayani Mot. at 2.  HCI

17  filed its Opposition on August 4, 2014.  Dkt. No. 27 ("Agbayani Opp'n").

18                              **LEGAL STANDARD**

19       Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to

20  dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6)

21  motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim

22  to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

23  facial plausibility standard is not a "probability requirement" but mandates "more than a sheer

24  possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

25  (internal quotations and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the

26  court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the

27  light most favorable to the non-moving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

28  F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on either a lack of a cognizable legal

United States District Court
Northern District of California

3

theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").  The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## DISCUSSION

### A.     Sabah's Motion

Sabah argues that HCI's intentional interference with contractual relations claim against it must be dismissed for failure to comply with the heightened pleading requirements of Rule 9. Sabah Mot. at 3.  Although HCI does not bring a separate cause of action for fraud, Sabah argues that HCI must comply with the heightened pleading standard because it seeks punitive damages based on Sabah's "willful, oppressive, and fraudulent" acts.  *Id.*  Sabah further argues that HCI's

4

1    claim should be dismissed with prejudice because HCI's allegations are based on "information and

2    belief," and HCI therefore cannot amend its Complaint with the required specificity.  *Id.* at 5.

3           California Civil Code section 3294, subdivision (a) permits an award of punitive damages

4    "for the breach of an obligation not arising from contract, where it is proven by clear and

5    convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  A claim

6    for intentional interference with contractual relations is based on tort liability and therefore

7    permits an award of punitive damages.  *Powerhouse Motorsports Grp., Inc. v. Yamaha Motor*

8    *Corp.*, 221 Cal. App. 4th 867, 885 (2013), *as modified on denial of reh'g* (Dec. 24, 2013), *review*

9    *denied* (Mar. 12, 2014); *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 664 (9th Cir. 1982).

10          While HCI does not bring a separate claim for fraud, its allegations of fraudulent conduct

11   in connection with its interference claim must still satisfy federal pleading standards.  Rule 9(b)

12   requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting

13   fraud."  Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To

14   satisfy Rule 9(b)'s heightened pleading standard, "[a]verments of fraud must be accompanied by

15   'the who, what, when, where, and how' of the misconduct charged."  *Yess v. Ciba–Geigy Corp.*

16   *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

17   1997)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (Claims

18   sounding in fraud must allege "an account of the time, place, and specific content of the false

19   representations as well as the identities of the parties to the misrepresentations.") (internal

20   quotation marks omitted).  A Rule 9(b) pleading must ensure that "'allegations of fraud are

21   specific enough to give defendants notice of the particular misconduct which is alleged to

22   constitute the fraud charged so that they can defend against the charge and not just deny that they

23   have done anything wrong.'"  *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)

24   (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

25          Here, HCI's allegations do not have sufficient particularity to meet the requirements of

26   Rule 9(b).  Although HCI alleges generally that Sabah met with Agbayani and made false

27   representations regarding HCI's work, it does not identify the specific false allegations, who made

28   them, when and where they were made, or how they were made.  However, in its Opposition, HCI

5

states that it can allege the following additional facts:

> In a letter dated November 18, 2013, Pamela Scholefield, counsel for AGBAYANI, informed HCI SYSTEMS that AGBAYNI met with an "Authorized Contractor" on site. HCI SYSTEMS later learned that this "Authorized Contractor" was SABAH.
>
> At that meeting, SABAH made false representations regarding HCI SYSTEMS and its work at the project, and advised, counseled and/or persuaded AGBAYANI that HCI SYSTEMS' work was defective. Those statements include, but are not limited to, that HCI SYSTEMS' work not as far along as HCI SYSTEMS had presented in its payment applications and the work provided by HCI SYSTEMS does not conform to the plans and specifications nor the Fire Code. Further, two specific examples given by SABAH of alleged non-conforming work are: (1) The wire connections are made with wire nut connectors instead of being crimped as is required by Code; and, (2) The relays are not installed correctly in the boxes. The foregoing statements, and others, were made with the intention to interfere with HCI SYSTEMS contractual relation with AGBAYANI. Later AGBAYANI indeed retained SABAH, HCI's competitor, to complete **the very same scope of work which HCI was performing**.

Sabah Opp'n at 8 (emphasis in original).  Based on these additional allegations, it is likely that HCI can meet its burden under Rule 9.  Thus, because HCI could cure its pleading by the allegation of other facts, leave to amend is appropriate.  *Lopez*, 203 F.3d at 1127.  Accordingly, the Court GRANTS Sabah's Motion to Dismiss based on failure to comply with Rule 9, WITH LEAVE TO AMEND.

**B.     Agbayani's Motion**

Agbayani argues that HCI's claims for intentional interference with contractual relations against it must fail because HCI fails to allege facts that support each element of the claim.  Agbayani Mot. at 2.  To establish a claim for intentional interference with contractual relations, a plaintiff must prove: (1) a valid contract between plaintiff and a third party; (2) a defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contract; (4) actual breach or disruption as a result of the acts; and (5) damages to plaintiff resulting from the breach.  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990); *Quelimane Co. v. Stewart Tit. Guar. Co.*, 19 Cal. 4th 26, 55 (1998).

Here, the Court finds that HCI has alleged the necessary elements of a claim for intentional interference with contractual relations.  First, HCI has pled that it entered into subcontract

United States District Court
Northern District of California

agreements with USG and ECOM.  Compl. ¶¶ 35, 45.  HCI has also pled that Agbayani had knowledge of the subcontracts.  *Id.* ¶¶ 36, 43.  As to the third element, HCI alleges that Agbayani met with USG and ECOM, made false representations regarding HCI and its work on the Project, and advised USB and ECOM to terminate their contracts.  *Id.* ¶¶ 37, 44.  HCI alleges actual breach based on USB's and ECOM's subsequent termination of their contracts.  *Id.* ¶¶ 38, 45.  Finally, HCI pleads damages based on the termination of the contracts.  *Id.* ¶¶ 39, 46.

Agbayani argues that HCI cannot plead the fourth element – actual breach or disruption – because it admits that the alleged false representations caused the termination of the contracts. Agbayani Mot. at 2.  Agbayani argues that termination is not a "breach" for purposes of a claim for intentional interference with contractual relations.  *Id.* at 4.  Agbayani provides no authority in support of its argument.  However, "pleading ultimate facts of interference, such as advising, counseling and **persuading termination of a contract**, is sufficient to state a cause of action for interference with contract."  *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200, 221 (1983) (emphasis added) (*disapproved on other grounds by Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994)).  "The core of a cause of action for interference is the act of intentionally interfering with another's contract.  In modern times, interference most typically takes the form of persuading a party to end his contract or other economic relationship with the plaintiff."  *Id.* at 222.  "Since persuasion is most commonly the "inducement" or "interference" lying at the heart of a cause of action for interference with contract relations, pleading the ultimate fact of persuasion and the means of persuasion should be more than adequate."  *Id.*  Thus, HCI's allegation that USG and ECOM breached their contracts based on Agbayani's intentional interference satisfies the fourth element.

Based on this analysis, the Court finds that HCI has stated a claim for intentional interference with contractual relations.  Accordingly, the Court DENIES Agbayani's Motion. However, as discussed above, HCI's claims include allegations that Agbayani's actions were fraudulent, and HCI must therefore comply with the heightened pleading requirements of Rule 9(b).  Although Agbayani did not raise this issue in its Motion, HCI should be mindful that its amended complaint must provide the who, what, when, where, and how of the misconduct

United States District Court
Northern District of California

7

charged.

## CONCLUSION

Based on the analysis above, the Court GRANTS Sabah's Motion to Dismiss and DENIES Agbayani's Motion to Dismiss.  HCI shall file an amended complaint by August 26, 2014.  HCI should be mindful that any allegations of fraud must meet the heightened pleading requirements of Rule 9(b).

**IT IS SO ORDERED.**

Dated: August 5, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California