UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF HCI SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AGBAYANI CONSTRUCTION CORPORATION, A CALIFORNIA CORPORATION, et al.,<br><br>Defendants. | Case No. 14-cv-02503-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

## INTRODUCTION

This is an interference with contractual relations and breach of contract case related to the construction of a fire alarm system upgrade at the Ronald Dellums Federal Building in Oakland, California. Pending before the Court is Defendant Sabah International, Inc.'s Motion to Dismiss Plaintiff HCI Systems, Inc.'s First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 34. Sabah seeks to dismiss the third cause of action for Intentional Interference with Contractual Relations ("IICR"), which is the only cause of action plead against Sabah. HCI has filed an Opposition (Dkt. No. 37) and Sabah filed a Reply (Dkt. No. 40). The Court finds this motion suitable for disposition without oral argument and **VACATES** the October 9, 2014 hearing. Civ. L.R. 7-1(b). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court **DENIES** Sabah's Motion for the reasons set forth below.

## BACKGROUND

Defendant Agbayani Construction Corporation, as a general contractor, entered into a written contract with the General Services Administration, under which Agbayani agreed to

construct and complete a fire alarm system upgrade at the Ronald Dellums Federal Building in Oakland, California (the "Project").[1] First Am. Compl. ("FAC") ¶ 7. Agbayani executed a bond with Defendant First National Insurance Company of America, as surety, "for the benefit of all persons who should perform labor upon or furnish materials to be used on the Project," in accordance with the Miller Act, 40 U.S.C. § 3131-34. *Id.* ¶ 21.

Agbayani subsequently entered into a written "time and material" subcontract with Plaintiff HCI Systems, Inc., in October 2012, under which HCI was to provide various materials, installation, programming, testing, inspections, and project management to complete the Project, in exchange for which Agbayani agreed to pay HCI up to $1,216,325.00. *Id.* ¶¶ 8, 12. Between October 2012 and September 2013, HCI completed its work under the Project and submitted invoices in the total amount of $436,243.24. *Id.* ¶¶ 13, 23. HCI alleges that it fully performed all of its obligations, but Agbayani has paid HCI only $286,055.47, leaving a balance of $150,187.77 plus interest owed to HCI. *Id.* ¶¶ 14, 16.

HCI alleges that Sabah knew of the subcontract between HCI and Agbayani. *Id.* ¶ 30. Specifically, HCI alleges that "Sabah met with Agbayani Construction and made false representations regarding HCI and its work at the project, and advised, counseled and/or persuaded Agbayani Construction that HCI's work was defective." *Id.* In a letter dated November 18, 2013, Pamela Scholefield, counsel for Agbayani, informed HCI that Agbayani met with an "Authorized Contractor" on site. *Id.* ¶ 31. HCI later learned that this "Authorized Contractor" was Sabah. *Id.* HCI further alleges that at that meeting, Sabah's false representations included: "that HCI's work was defective, that HCI's work was not as far along as HCI had represented in its payment applications, and the work provided by HCI does not conform to the plans and specifications nor the Fire Code." *Id.* ¶ 32. HCI provides two examples given by Sabah of alleged non-conforming work: "(1) The wire connections are made with wire nut connectors instead of being crimped as is required by Code; and, (2) The relays are not installed correctly in the boxes." *Id.* HCI contends that these statements and others were made with the intention to interfere with

---

[1] HCI does not allege the date this contract was executed.

2

HCI's contractual relation with Agbayani. *Id.*

After this meeting, Agbayani refused to pay the balance due, and this refusal is the result of Sabah's wrongful conduct. *Id.* ¶ 33. Agbayani then contracted with Sabah for the work set forth in the subcontract between Agbayani and HCI. *Id.*

On May 30, 2014, HCI filed its initial Complaint. Dkt. No. 1. Relevant to the present Motion, HCI's third cause of action was for IICR against Sabah. *Id.* ¶¶ 28-33. HCI alleged that Sabah knew of the subcontract between HCI and Agbayani, Sabah met with Agbayani and made false representations regarding HCI's work, and on that basis Agbayani refused to make payments to HCI and contracted with Sabah for the work set forth in the subcontract. *Id.* ¶¶ 29-31. Sabah filed a Motion to Dismiss on July 21, 2014, seeking dismissal of the third cause of action for HCI's failure to plead its allegations of intentional interference with contractual relations with particularity as required under Rule 9. Dkt. No. 19.

On August 5, 2014, the Court granted Sabah's motion with leave to amend. *Order Re: Motion to Dismiss*, Dkt. No. 29. While HCI did not bring a separate claim for fraud, the Court held that its allegations of fraudulent conduct in connection with its interference claim must still satisfy federal pleading standards under Federal Rule of Civil Procedure ("Rule") 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." *Id.* at 5 (citing Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Although HCI alleged generally that Sabah met with Agbayani and made false representations regarding HCI's work, the Court found that it did not identify the specific false allegations, who made them, when and where they were made, or how they were made. *Id.* As it could cure these deficiencies, the Court ordered HCI to file an amended complaint by August 26, 2014, but warned that it "should be mindful that any allegations of fraud must meet the heightened pleading requirements of Rule 9(b)." *Id.* at 8.

HCI filed its FAC on August 22, 2014, adding additional allegations as set forth above. HCI also alleges that "the acts of Sabah were willful, oppressive and fraudulent," and "HCI is therefore entitled to punitive damages." FAC ¶ 35. Sabah responded by filing the present Motion to Dismiss on September 4, 2014, arguing that HCI's additional allegations still do not meet the

3

particularity requirements of Rule 9(b).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

**DISCUSSION**

In its Motion, Sabah argues that HCI continues to plead only general allegations against it, but HCI's FAC fails to put Sabah on notice of who allegedly made the false representations and when they were made. Mot. at 6. In response, HCI maintains that it has properly pled the requisite elements for a cause of action for IICR and met the specificity requirements for allegations of fraud. Opp'n at 5. HCI notes that it:

> has pled the who (the authorized contractor SABAH), what (the false representations "that HCI's work was defective, that HCI's work was not as far along as HCI had represented in its payment applications, and the work provided by HCI does not conform to the plans and specifications nor the Fire Code. Further, two specific examples given by Sabah of alleged non-conforming work are: (1) The wire connections are made with wire nut connectors instead of being crimped as is required by Code; and, (2) The relays are not installed correctly in the boxes"), when (at the meeting between authorized contractor SABAH and AGBAYANI), where (on site), and how (based upon the context, the representations were oral).

*Id.* at 7.

**A.    Legal Standard**

"[T]he elements of a cause of action for intentional interference with contractual relations are '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 448 (1993) (quoting *Pacific Gas & Electric Co. v. Bear Stearns & Co*., 50 Cal. 3d 1118, 1126 1990)). California Civil Code section 3294, subdivision (a) permits an award of punitive damages "for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." A claim for IICR is based on tort

liability and therefore permits an award of punitive damages. *Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp.*, 221 Cal. App. 4th 867, 885 (2013), *as modified on denial of reh'g* (Dec. 24, 2013), *review denied* (Mar. 12, 2014); *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 664 (9th Cir. 1982).

As noted in the Court's previous Order, HCI's allegations of fraudulent conduct in connection with its IICR claim must still satisfy federal pleading standards. Rule 9(b) requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns*, 567 F.3d at 1124. To satisfy Rule 9(b)'s heightened pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Yess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.") (internal quotation marks omitted). A Rule 9(b) pleading must ensure that "'allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

### B. Application to the Case at Bar

Here, HCI alleges the who (Sabah met with Agbayani), but does not specify the individuals. FAC ¶ 32. It alleges the what (Sabah's false representations "that HCI's work was defective, that HCI's work was not as far along as HCI had represented in its payment applications, and the work provided by HCI did not conform to the plans and specifications nor the Fire Code). *Id.* It also alleges two specific examples given by Sabah of alleged non-conforming work: (1) the wire connections are made with wire nut connectors instead of being crimped as is required by Code; and (2) the relays are not installed correctly in the boxes. *Id.* As to when and where these allegations were made, HCI alleges they occurred at an "on site" meeting between Sabah and Agbayani, and that the meeting was confirmed in a letter dated November 18,

2013 from Pamela Scholefield, counsel for Agbayani. *Id.* However, HCI does not allege whether the meeting took place on November 18 or another date. Finally, as to how the allegations were made, HCI alleges that, based upon the context of the meeting, the representations were oral. Opp'n at 7.

It is understandable that HCI would not know all the specifics of the meeting, such as the individual at Sabah that made the remarks or the exact date of the meeting, as such information is within Sabah and Agbayani's knowledge, not HCI's. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (The pleading requirement under Rule 9(b) is relaxed "with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts."). Moreover, "Rule 9(b)'s particularity requirements must be read in harmony with Federal Rule of Civil Procedure 8's requirement of a 'short and plain' statement of the claim. Thus, the particularity requirement is satisfied if the complaint 'identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.'" *Engurasoff v. Coca-Cola Co.*, 2014 WL 4145409, at *2 (N.D. Cal. Aug. 21, 2014) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Thus, although HCI admits that it does not know the specific individuals at Sabah that made the remarks, or the exact date, (Opp'n at 7; FAC ¶ 5), the Court finds that the allegations of fraud that are within HCI's knowledge are specific enough to give Sabah notice of the particular misconduct which is alleged so that it can defend itself. Although the Court cannot say whether it will ultimately prevail on its fraud claim, HCI has remedied the defects identified by the Court, and dismissal at this stage is not warranted.

## CONCLUSION

Based on the analysis above, the Court **DENIES** Sabah's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: October 6, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

7